UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEREMY DANIELS,<br><br>Defendant. | Case No. 19-cr-00709-BLF-1<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>[Re: ECF No. 101] |

On May 16, 2022, the Court denied Defendant Jeremy Daniels' motion to suppress a Beretta PX4 semi-automatic handgun and related paraphernalia that Daniels discarded while fleeing from police officers who sought to detain him for riding his bicycle through a stop sign. ECF No. 95 ("MTS Ord."); *see also United States v. Daniels*, 2022 WL 1540035 (N.D. Cal. May 16, 2022). Daniels sought and received permission from the Court to move for reconsideration of a portion of that order. Daniels asks the Court to reconsider the portion of that order that held that, even though officers subjected Daniels to excessive force when a patrol vehicle collided with Daniels, there was no causal nexus between the collision and discovery of the evidence because Daniels got up and fled from the officers before discarding the seized evidence. ECF No. 101 ("Mot."); *see also* ECF No. 105 ("Reply").[1] The Government opposes the motion for reconsideration. ECF No. 104 ("Opp."). After considering the papers, the Court DENIES the motion for reconsideration.

I.  **BACKGROUND**

The full factual background is detailed in the Court's order denying Daniels' motion to

---

[1] The motion for leave to file a reply brief is GRANTED.

suppress. *See* MTS Ord. at 1–4. In brief, on November 6, 2019, San Jose police officers Alexander Cristancho and Steven Aponte noticed a male subject fail to make a complete stop at a stop sign in violation of the California Vehicle Code. The officers confronted the suspect in their patrol vehicle. Officer Cristancho rolled down the passenger side window, cracked the door, and told the subject to pull over. The suspect turned his head towards Officer Cristancho, who saw him and suspected that he might be Defendant Jeremy Daniels, who Officer Cristancho knew had an outstanding no-bail arrest warrant. Daniels asked Officer Cristancho if he was under arrest, and Officer Cristancho said, "You're about to be." Daniels sped up on his bicycle and ran through a second stop sign. Officer Cristancho exited the vehicle to pursue Daniels on foot.

Officer Aponte continued driving the police cruiser with the lights flashing and sirens blaring. He lost sight of Daniels as Daniels rode his bicycle onto the sidewalk. Believing Daniels to have gotten off the bicycle to flee on foot, Officer Aponte accelerated and pulled into the driveway at 230 North 19th Street. As Officer Aponte slowed to a stop in the driveway, the front end of the police vehicle collided with Daniels' bike, causing Daniels to pitch over the front handlebars and fall off the bicycle.

Daniels immediately got up and ran down the driveway at 230 North 19th Street. Officer Cristancho commanded Daniels to "get on the ground." As Daniels ran down the driveway, he reached into his waistband and threw at least one black object (which split into two pieces) into the air towards the neighboring house. The officers subdued Daniels shortly after. A search of the neighboring yard revealed (1) an empty 17-round capacity magazine with the baseplate removed; (2) 14 rounds of 9mm Luger ammunition; (3) a black sock containing a Beretta PX4 Storm 9mm semi-automatic handgun, with the safety in the off position and one round of 9mm Luger ammunition loaded in the chamber; and (4) a baseplate and spring for a magazine.

On December 19, 2019, a grand jury returned a single-count indictment charging Daniels with violation of 18 U.S.C. § 922(g)(1).

## II. PRIOR ORDER

The Court denied Daniels' motion to suppress the evidence discovered following the interaction with Officers Aponte and Cristancho. *See* MTS Ord. at 4–14. First, the Court found

1  that the officers' stop of Daniels was justified by the traffic infractions they observed and Daniels'
2  flight after the initial conversation with Officer Cristancho while Officer Cristancho was in the
3  passenger seat of the police vehicle. *Id.* at 5–8.  Second, the Court found that the Government had
4  not met its burden to show by a preponderance of the evidence that a seizure did not occur and
5  held that Officer Aponte used excessive force against Daniels when he hit Daniels with the police
6  vehicle. *Id.* at 8–12.

7  Finally, and as most relevant for the purposes of this motion, the Court found that
8  suppression of the evidence was not warranted because there was no causal nexus between the
9  excessive force that Officer Aponte used and the discovery of the evidence sought to be
10  suppressed.  MTS Ord. at 12–14.  The Court held that the seizure of Daniels only lasted for the
11  instant that the police vehicle collided with him and when he momentarily lay on the ground after
12  the collision because Daniels immediately got up and fled afterwards.  *Id.* at 13 (citing *California
13  v. Hodari D.*, 499 U.S. 621, 625 (1991), and *Torres v. Madrid*, 141 S. Ct. 989, 999 (2021)).
14  Seizures by force "last[] only as long as the application of force," absent submission by the
15  suspect.  *Torres*, 141 S. Ct. at 999.  Because the contraband was neither dislodged during those
16  moments nor came into plain view as a result of the collision, the Court held that suppression of
17  the evidence was not warranted.  MTS Ord. at 13–14 (citing *United States v. Ankeny*, 502 F.3d
18  829, 837–38 (9th Cir. 2007); *United States v. McClendon*, 713 F.3d 1211, 1215–17 (9th Cir.
19  2013)).

20  **III.    RECONSIDERATION**

21  Daniels seeks reconsideration of the final portion of the Court's prior order:  that
22  suppression of the contraband was not required because there was no causal nexus between the
23  excessive force used against Daniels and the discovery of the contraband.  Mot. at 2–6.  The
24  Government opposes the request for reconsideration, saying that the Court's holding that there
25  was no causal nexus between the excessive force and discovery of the evidence was correct.  Opp.
26  at 1–4.  After reconsidering this issue, the Court finds that it did not err in its original order.
27  Daniels and the Government agree that the Court identified the correct legal principles in
28  its original order.  The exclusionary rule requires suppression of both evidence obtained during an

3

unlawful search or seizure and "indirect . . . products of such invasions." *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963). The indirect products of a Fourth Amendment violation—the so-called "fruit of the poisonous tree"—are ordinarily tainted and thus inadmissible. *Id.* at 488.

This rule is subject to important exceptions, one of which is the one the Court discussed in its original order: the attenuation doctrine. "[T]he exclusionary rule applies only when discovery of evidence results from a Fourth Amendment violation." *United States v. Ankeny*, 502 F.3d 829, 837 (9th Cir. 2007). Accordingly, suppression of evidence is not required where the connection between the initial unlawful act and recovery of the contraband is "so attenuated as to dissipate the taint" of the original unlawful act. *Wong Sun*, 371 U.S. at 487. Because the Court already found that excessive force resulted in a seizure of Daniels when he was struck by the police vehicle and momentarily lay prostrate on the ground before getting up and running, the question in the attenuation doctrine becomes "whether 'the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *United States v. Garcia*, 516 F.2d 318, 319 (9th Cir. 1975) (quoting *Wong Sun*, 371 U.S. at 488).

As the Court explained in its prior order, multiple Ninth Circuit cases have held that fleeing from police—even after being seized or searched unlawfully—is an intervening act that purges the primary taint of the unlawful search or seizure from the discovery of the contraband. *Garcia* provides the foundational rule. In *Garcia*, the Border Patrol ordered a driver to stop for an additional inspection at a fixed border checkpoint. 516 F.2d at 319. The driver initially parked at the second inspection site, but then sped off. *Id.* Officers stopped him after a high-speed chase and located 55 pounds of marijuana in the trunk of the vehicle. *Id.* Assuming the illegality of the stop, the Ninth Circuit found that defendant's flight was his own "voluntary conduct" that purged any taint from the stop. *Id.* "Where a suspect's act is the intended result of illegal police conduct, or ensuing police action, it is likely to prove tainted." *Id.* at 319. "But where the illegal conduct of the police is only a necessary condition leading up to the suspect's act," the court stated, "no taint attached to his conduct; a 'but-for' connection alone is insufficient." *Id.* at 319–20. The

4

court held that if there was evidence that the checkpoint "was designed to lure suspected criminals into flight from law enforcement," the conclusion might be different because then the "intended result" of the stop would have been the defendant's flight. But there was no such evidence, and "the illegal stop was no more than part of a series of facts leading up to the subsequent flight." *Id.* at 320. "By ordering [defendant] to stop, the officer could hardly have intended him to flee." *Id.* Suppression of the marijuana evidence was thus unwarranted.

*McClendon* applied *Garcia* to another set of facts. Officers searched McClendon's backpack and located a firearm. 713 F.3d at 1212. Officers then pursued McClendon for being a felon in possession of a firearm, located him, and ordered him to put his hands up. He instead walked away from officers, moved his hands toward his waist, and made a throwing motion. *Id.* at 1213. Officers subdued him and located a gun a few feet away. *Id.* The Ninth Circuit affirmed denial of the motion to suppress. Even assuming that the original search was unlawful, the court found that the handgun was not the fruit of the illegal backpack search because McClendon's walking away from officers after they told him to put his hands up "was an intervening event that purged any taint" from the initial search of the backpack. *Id.* Suppression of the gun thrown away by McClendon was thus unwarranted.

The same conclusion results here. The Court found that Daniels was subjected to excessive force that resulted in a momentary seizure while Daniels was struck and lay on the ground prior to fleeing. MTS Ord. at 13. But the Court held that the seizure ended there when Daniels got up and fled from the officers. It was only after engaging in flight, "voluntary conduct" that Daniels himself chose to perform, that Daniels discarded the evidence in question. There is no evidence that the use of excessive force was designed to make Daniels run or to discard evidence. As such, Daniels fleeing and discarding the contraband was not "the intended result of illegal police misconduct;" instead, it was "only a necessary condition leading up to [Daniels'] act" such that no taint attaches to the evidence the officers discovered. *Garcia*, 516 F.3d at 319–20.

Daniels' efforts to distinguish *Garcia* and *McClendon* are unavailing. First, Daniels argues that *Garcia* is "limited to cases where the flight is not in response to an officer's use of excessive

5

force," and that under California law Daniels was entitled to resist excessive force by fleeing. Reply at 2. *Garcia* is not so limited. There is no indication from the *Garcia* decision that its pronouncements regarding the reach of the attenuation doctrine—that no taint attaches if the unlawful action is merely a necessary condition of the act, rather than performed with the objective of causing the act—are restricted to cases that do not involve excessive force. It is true that *Garcia* did not involve a case of excessive force, and the court there recognized that a suspect may have a right to resist arrest in cases where "unreasonable force" was used. But *Garcia* did not hold that taint automatically attached in cases where excessive force was used but not for the purpose of forcing the defendant to act in the way that he did. Daniels had not cited a case so holding.

Some courts have also looked to factors spelled out in *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975), to determine if a causal connection between unlawful conduct and discovery of evidence is sufficiently attenuated. Those factors also support the Court's original decision. First is the time elapsed between the constitutional violation and acquisition of the evidence. *Brown* 422 U.S. at 603. The few minutes between the collision and the discovery of Daniels' discarded contraband here has previously been found sufficient to attenuate the causal connection. *See McClendon*, 713 F.2d at 1214–15 (officers discovered handgun discarded by defendant that was "still warm to the touch"). Second is the presence of intervening circumstances. *Brown*, 422 U.S. at 603. As previously discussed, Daniels' flight is an intervening circumstance weighing in favor of attenuation, even if it followed excessive force. *See McClendon*, 713 F.2d at 1217–18; *see also United States v. Coleman*, 518 F. App'x 561, 562 (9th Cir. 2013) (unpublished) (defendant's "effort to break away and attempt to flee" was the "[m]ost significant" consideration in the *Brown* analysis and was a "sufficient intervening circumstance to purge the taint of any initial illegality that may have existed"). Finally, the court considers the purpose and flagrancy of the official misconduct. *Brown*, 422 U.S. at 603–04. The Court recognizes that it found that Daniels was subjected to excessive force when the police vehicle collided with him. *See* MTS Ord. at 11–12. To the extent that this factor favors finding a causal connection, it does so only narrowly. Daniels was not seriously injured by the collision; instead, he immediately got up to flee from officers.

6

Moreover, later-discovered evidence has not been suppressed even in cases involving more egregious police misconduct that resulted in serious personal injuries and property damage. *See Ankeny*, 502 F.3d at 833 (no suppression of gun discovered in plain view during search, even though officers (1) broke down the door of the residence and threw a flash-bang grenade into the room near a sleeping occupant, causing first- and second-degree burns to the occupant, and (2) shot out the second-story windows with rubber bullets and threw a second flash-bang grenade near a man and woman sleeping in a bed, which caught fire). On balance, these factors also weigh in favor of finding causal attenuation here.

The out-of-circuit cases that Daniels cites do not alter the Court's conclusion. Daniels is correct that some of the cases he cites resulted in suppression of evidence even where defendant's own choice to flee occurred after an unlawful police act. *See* Mot. at 5; Reply at 3 (citing, *e.g.*, *United States v. Brodie*, 742 F.3d 1058, 1060 (D.C. Cir. 2014); *United States v. Griffith*, 867 F.3d 1265, 1279 (D.C. Cir. 2017); *United States v. Bailey*, 691 F.2d 1009, 1015 (11th Cir. 1982)). But this Court is bound to apply the rule established in Ninth Circuit cases like *Garcia* and *McClendon* (and applied in *Coleman*): that a suspect's flight, even if only brief and in response to unlawful police conduct, is an intervening circumstance that results in causal attenuation. *See Garcia*, 516 F.2d at 319–20; *McClendon*, 713 F.3d at 1212–13.

Accordingly, the Court reaffirms its prior decision that there was an insufficient causal nexus between the excessive force and discovery of the contraband, such that suppression of the contraband is not warranted.[2] For those reasons, Daniels' motion for reconsideration is DENIED.

**IT IS SO ORDERED.**

Dated: August 11, 2022

/s/ Beth Labson Freeman

BETH LABSON FREEMAN
United States District Judge

---

[2] Because the attenuation doctrine applies, the Court need not consider whether the inevitable discovery doctrine also applies. Opp. at 4–5; Reply at 4.

7